IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **VERNAL SHAWN BAKER,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| v. ) | **Civil Action No. 5:04-00917** |
| ) | **Criminal Action No. 5:03-00094** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**PROPOSED FINDINGS AND RECOMMEDNATION**

Pending is Movant's letter docketed by the United States District Court Clerk's Office as a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody asserting two claims.[1] (Document No. 52.) Having conducted a thorough examination of the record in this matter, the underlying criminal proceedings and the Fourth Circuit Court of Appeals, the undersigned has determined that the record conclusively shows that Movant is entitled to no relief and respectfully recommends that this matter be dismissed.

**FACTUAL BACKGROUND**

Movant was charged in a Five Count Indictment filed on April 30, 2003, with distributing cocaine base and aiding and abetting the distribution of cocaine base in December, 2002, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. United States v. Baker, Criminal No. 5:03-0094, Document No. 1. Movant entered a guilty plea to the charges contained in Count One of the Indictment in the District Court on June 24, 2003. Id., Document Nos. 20 and 21. The District Court

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

sentenced Movant on December 3, 2003, to a 188 month term of imprisonment and a three year term of supervised release and imposed a $100 special assessment and a $3,000 fine.[2] Id., Document No. 36.[3] Movant filed a Notice of Appeal *pro se* and through his attorney, Mr. Skaggs, and the District Court authorized him to proceed on appeal *in forma pauperis* on December 18, 2003. Id., Document Nos. 38 - 40. By Order filed on January 6, 2004, the Fourth Circuit Court of Appeals appointed Mr. Skaggs to represent Movant. Id., Document No. 45. The Fourth Circuit's docket sheet indicates that on February 10, 2004, Movant requested that Attorney Samuel Shamansky replace Mr. Skaggs as his attorney and Mr. Shamansky filed a counsel of record form on February 11.[4] By Order filed on February 11, 2004, the Fourth Circuit relieved Mr. Skaggs of the obligation of further representing Movant. United States v. Baker, Criminal No. 5:03-0094, Document No. 49. The Fourth Circuit filed a Briefing Order on February 12, 2004, requiring that Movant's brief and the Joint Appendix be filed by March 18, 2004. Movant apparently did not file his brief or the Joint Appendix by that date, and on April 6, 2004, the Fourth Circuit notified Movant of his default and gave him 15 days from that date to file the documents. On April 7, 2004, Movant filed a Motion to Dismiss stating that "Appellate counsel has reviewed the record of the proceedings and finds no merit to the instant appeal. Thus, Appellant respectfully moves this Court to dismiss the instant appeal pursuant to Federal Rule of Appellate Procedure 42(b)." Mr. Shamansky signed the Motion to Dismiss, and the

---

[2] Movant qualified as a career offender under the United States Sentencing Guidelines and for credit for acceptance of responsibility. The District Court sentenced Movant, therefore, to a term of imprisonment at the top of the range designated for Offense Level 29, Criminal History Category VI. (Document No. 37.)

[3] The Bureau of Prisons' Inmate Locator indicates that Movant's projected release date is January 17, 2019.

[4] A copy of the Fourth Circuit's docket sheet and Movant's Motion to Dismiss his appeal is attached hereto.

Motion also bears a signature of "Vernal Lee Baker".[5] On April 19, 2004, the Fourth Circuit filed an Order dismissing Movant's appeal. United States v. Baker, Criminal No. 5:03-0094, Document No. 51.

On August 25, 2004, Movant, acting *pro se*, filed a letter dated August 10, 2004 and addressed to Chief United States District Judge David A. Faber complaining that he received ineffective assistance of counsel. (Doc. No. 52.) Movant states that his trial counsel, Mr. Ernest Skaggs, advised that he "would get between (5) and (7) years, that [his] 'relevant conduct' would be kept out . . . , and that [his] Federal Sentence would be made to run concurrently with [his] state sentence." (Id. at 1.) Movant states that his trial counsel "was wrong about everything that he told [him] which in [his] opinion was due to lack of experien[ce], lack of attention or his drinking[.]" (Id. at 2.) Movant contends that after his sentencing his family retained Mr. Shamansky to file a direct appeal. (Id.) Movant, however, states that Mr. Shamansky did not file an appeal on his behalf. (Id.) Movant's letter was docketed by the United States District Court Clerk's Office as a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. In February and March, 2006, Movant filed additional documents in this matter contending that Mr. Shamansky advised him to dismiss his direct appeal and that Mr. Shamansky would instead file a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody on his behalf. Document Nos. 60 and 61.

In view of Movant's allegations, the undersigned required that Respondent file an Answer and gave Movant a period of time within which to file a reply. Document No. 68. Respondent filed

---

[5] At his June 24, 2003, plea hearing, Movant informed the District Court that his true name is Vernal Lee Baker. (Criminal No. 5:03-0094, Document No. 21.)

a Response to Movant's Motion on May 31, 2007. Document No. 72. Respondent asserts that Movant has not demonstrated that Mr. Skaggs or Mr. Shamansky's representation was constitutionally ineffective. Respecting Movant's claim that Mr. Skagg's representation was constitutionally defective, Respondent submits Mr. Skaggs' Affidavit[6] and states that Mr. Skaggs consulted with [Movant] on several occasions and never told him that relevant conduct would not be used against him. Further, as indicated by [Movant's] Pre-Sentence Report (PSR), Mr. Skaggs did not object to relevant conduct because [Movant] was a career offender which made the issue of relevant conduct moot as far as his sentencing guidelines. The PSR additionally placed defendant in a guideline imprisonment range of 151 to 188 months. Defendant raised no objections to the PSR." Respecting Movant's claim that Mr. Shamansky's representation was constitutionally defective, Respondent submits Mr. Shamansky's Affidavit[7] and states that "after meeting with

---

[6] Mr. Skaggs states as follows in his Affidavit:

\* \* \*

4. To the best of my recollection, Mr. Baker was unclear on his criminal history, or he chose not to divulge it to me. It is difficult sometimes to know the difference. He certainly was told about the Guidelines and that the Federal system was completely different from the state system and that it included misdemeanor charges and even possibly juvenile records.
5. I never told him that relevant conduct would not be used against him.

\* \* \*

7. I had filed the Notice of Appeal and was in the process of working on the appeal when he hired Mr. Shamansky. I talked to him once and mailed him my court file, including my work product. At that point, my legal obligations to Mr. Baker ceased.

[7] Mr. Shamansky states in his Affidavit as follows:

1. I was retained by Vernal Baker's family to assist him with an appeal of his conviction in the United States District Court for the Southern District of West Virginia.

4

[Movant] he determined that [Movant's] guilty plea was knowingly, voluntarily, and intelligently made and that hisسentence was not subject to attack. He thoroughly discussed these matters with [Movant] and [Movant] agreed with [his] assessment. Accordingly, [Movant] decided to withdraw his appeal. Further, in a follow-up conversation with Mr. Shamansky, he informed the United States that he made no such promise of filing a § 225 petition on behalf of [Movant]."

Movant did not file a reply to Respondent's Response, Rather, on June 5, 2007, Movant filed a Motion for Leave to Amend his Section 2255 Motion, a further Motion, a Memorandum in Support and his Declaration. Document Nos. 73 - 75. Movant requests that the District Court permit him to go forward with his direct appeal because Mr. Shamansky gave him "erroneous advice" in urging him to withdraw his direct appeal and promising to file a motion under Section 2255 and Mr. Skaggs gave him "erroneous information" which influenced him on entering his plea.[8] Thus, it appears that Movant requests that the District Court consider his plea of guilty not made knowingly, voluntarily and intelligently and deem it unconstitutional and invalid.[9]

---

2. After meeting with Mr. Baker and reviewing his case, I determined that his guilty plea was knowingly, voluntarily and intelligently made and that his sentence was not subject to attack.
3. I thoroughly discussed these matters with Mr. Baker and he agreed with my assessment.
4. Based upon my discussions with Mr. Baker, his appeal was dismissed.

[8] Because the undersigned has considered the matters which Movant raises in seeking to amend his Section 2255 Motion, the undersigned will grant his request for leave to amend by separate Order. The undersigned finds that the matters which Movant raises in seeking to amend his Motion are essentially the same as those which he raised initially.

[9] The undersigned notes that Movant attaches an unsworn and unsigned statement of his sister Gloria J. Smart to his Memorandum in Support of his Motion to Amend (Document No. 74.) Ms. Smart indicates that she, her brother Albert and sister met with Mr. Shamansky about a week after Movant's sentencing hearing to discuss retaining him. They paid Mr. Shamansky's $15,000 fee in January, 2004. Thereafter, Ms. Smart claims, she "would call and leave numerous messages

**DISCUSSION**

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to be cognizable under Section 2255, claims based on other than constitutional or jurisdictional grounds must present exceptional circumstances that justify permitting a collateral attack. Stated another way, the alleged error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Section 2255 is not a substitute for direct appeal. United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Accordingly, errors warranting a reversal on direct appeal will not necessarily support a collateral attack. Knight v. United States, 37 F.3d 769, 772 (1st Cir.1994). *See* United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Failure to raise an issue presented in sentencing on direct appeal which is non-constitutional in nature amounts to a waiver of the right to contest the issue in Section 2255 proceedings. *See* United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989).

With respect to issues which are constitutional in nature, absent a showing of good cause for and prejudice from failing to appeal as may be shown by a defendant in criminal proceedings,

---

and would try to catch him in his office on Saturdays because those were days when he would see clients. After speaking with him he sent my brother a letter to withdraw his appeal so that he could file a 2255." Ms. Smart indicates further that Mr. Shamansky went to meet with Movant at FCI Beckley some time after agreeing to represent him.

Section 2255 is no substitute, and the failure precludes Section 2255 review. Theodorou v. United States, 887 F.2d 1336, 1339-40 (7th Cir. 1989)("[A]bsent a showing of cause and prejudice, a defendant is barred from raising any constitutional challenge in a section 2255 proceeding which could have been raised on direct appeal."); United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993); *See also* United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), *cert. denied*, 517 U.S. 1161, 116 S.Ct. 1555, 134 L.Ed.2d 657 (1996). The standard is conjunctive. As a general matter, therefore, movants must show good cause for and prejudice from their failure to raise any constitutional issues advanced under Section 2255 on direct appeal. *See* Theodorou, *supra*, 887 F.2d at 1340. Constitutional claims of ineffective assistance of counsel are the exception. They are more properly raised in Section 2255 proceedings and not on direct appeal. United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), *cert. denied*, 528 U.S. 1096, 120 S. Ct. 837, 145 L.Ed.2d 704 (2000).

Indigent criminal defendants have the constitutional right to effective assistance of counsel through a direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under § 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), *cert. denied*, 502 U.S. 1112, 112 S. Ct. 1219, 117 L.Ed.2d 456 (1992).

The United States Supreme Court established a framework for analyzing claims of ineffective assistance of counsel in taking criminal cases on appeal in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S. Ct. 1029, 145 L.Ed.2d 985 (2000). The Fourth Circuit stated the <u>Roe v. Flores-Ortega</u> analytical framework as follows in <u>United States v. Witherspoon</u>, 231 F.3d 923, 926 (4th Cir. 2000):

> An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective. * * * When a client does not specifically instruct counsel to appeal, however, whether counsel has been ineffective by failing to appeal depends upon 'whether counsel in fact consulted with the defendant about an appeal.' * * * in this context 'consult' 'convey[s] a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.' * * * If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance. * * * The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe 'either (1) that a reasonable defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.' * * * Although the <u>Roe</u> Court declined to adopt a per se rule that defense counsel who fails to consult with the defendant concerning an appeal is ineffective, the Court did state, 'We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.' * * *

<u>Id.</u>, citations to <u>Roe v. Flores-Ortega</u> omitted. The <u>Roe v. Flores-Ortega</u> Court stated the following two factual scenarios under which "it would be difficult to say that counsel is 'professionally unreasonable' . . . as a constitutional matter, in not consulting with . . . a defendant regarding an appeal."

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. * * * Or . . . suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

9

Roe v. Flores-Ortega, 528 U.S. at 479 - 480, 120 S.Ct. at 1036. *See also* United States v. Poindexter, __ F.3d __, 2007 WL 1845119 (C.A. 4(Md.)). The undersigned will consider Movant's claim that Mr. Skaggs' representation was ineffective under Strickland, and, will consider his claim that Mr. Shamansky's representation was ineffective under Roe though it amounts to an extension of Roe to the circumstances as Movant alleges that Mr. Shamansky was ineffective in counseling him to voluntarily dismiss his appeal.

**A.    Ineffective Assistance of Trial Counsel Affecting the Voluntariness of Movant's Plea.**

Generally, a guilty plea acts as a complete admission of factual guilt and therefore waives any constitutional violation associated with the determination of guilt. A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). The United States Supreme Court held in Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546 - 47, 81 L.Ed.2d 437 (1984), "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Once a defendant pleads guilty, he cannot raise independent claims of deprivation of constitutional rights which occurred prior to the entry of the guilty plea. Tollet v. Henderson, 411 U.S. 258, 266 - 67, 93 S.Ct. 1602, 1607 - 08, 36 L.Ed.2d 235 (1973). Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); *see also* Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution. See for example Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir.

1995)(A defendant challenging the voluntariness of a guilty plea may assert a claim under Brady that the prosecution withheld evidence favorable to the defendant and material to guilt or punishment when defendant requested it.).

Nothing in the record indicates that Mr. Skaggs misinformed Movant respecting his possible sentence and Movant was thereby induced to plead guilty. The record in this case reflects that Movant's guilty plea was voluntary and made with full knowledge of its consequences. The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (United States v. Baker, Criminal No. 5:03-0094, Document No. 19.) The written plea agreement provided that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises, and will make no recommendation, as to a specific sentence." At his June 24, 2003, plea hearing, the District Court informed Movant of the maximum sentence to which he was subject, elicited Movant's statement that he knew that his sentence was in the Court's discretion and found that Movant's plea was voluntary.[10] In view of these documented findings and Mr. Skaggs' Affidavit, the undersigned finds that Movant has not met the competence and the prejudice prongs of the Strickland analysis, and has failed therefore to prove that Mr. Skaggs' was ineffective in counseling and representing him through his guilty plea.

## B. **Ineffective Assistance of Appellate Counsel.**

---

[10] The District Court wrote in its June 30, 2003, Order covering the plea hearing that "[t]he defendant stated that he understood that the matter of sentencing remains entirely within the discretion of the court based upon what the presentence investigation revealed and that he would be bound by his plea had have no right to withdraw that plea if the sentence imposed was more severe than he expected. * * * The court found that the defendant tendered his plea of guilty voluntarily and with a full understanding and awareness of the constitutional and other rights which he gives up by pleading guilty, and with an awareness of what the United States would have to prove against him if the case went to trial. The court further found that the defendant had an appreciation of the consequences of his plea."(*United States v. Baker*, Criminal No. 5:03-0094, Document No. 21.)

Extending and applying the Roe standard to the circumstances in this case, the question becomes whether Mr. Shamansky consulted with Movant and obtained Movant's approval of the voluntary dismissal of his appeal. From Mr. Shamansky's Affidavit and the Motion to Dismiss as Movant signed it, it is clear that Mr. Shamansky determined that Movant could raise no meritorious claims on appeal, discussed it with Movant suggesting that he voluntarily dismiss his appeal and Movant agreed apparently thinking that some better opportunity existed to challenge his conviction on assertions of ineffective assistance of counsel under Section 2255. Had Movant not agreed, Mr. Shamansky would have been required to file an Anders brief.[11] The record indicates that Mr. Shamansky acted consistently with the Supreme Court's expectations as set forth in Roe, and therefore, Movant's claim that he was ineffective in counseling him to withdraw his appeal is without merit.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Document No. 52.) and remove this matter from the Court's docket.

The Movant is notified that these Proposed Findings and Recommendation are hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(a), Federal Rules of Civil Procedure, Movant shall have three days (mailing/service) and

---

[11] Mr. Shamansky's decision that Movant should withdraw his appeal and file a Motion under Section 2255 might also be viewed as tactical or strategic and not unreasonable at the appellate level. *See Miller v. United States*, 2005 WL 2990193, pp. 8 - 9 (W.D.Mich.).

then ten days (filing of objections), for a total of thirteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served upon the presiding United States District Judge Faber and this Magistrate Judge.

The Clerk is directed to file these Proposed Findings and Recommendation and to mail a copy of the same to Movant, who is acting *pro se,* in these proceedings, and counsel of record.

Date: July 24, 2007.

R. Clarke VanDervort
United States Magistrate Judge